P.C. 10-4633, Mr. Campbell, Mr. Modugno, and Mr. Kang. Thank you very much for granting our wish to divide the argument today between myself and Mr. Hyde. We'd like to reserve 4 minutes for rebuttal, but of course permission to give comments and preparation and expertise to divide that amount of time to each of us. We'll give that or perhaps what we can do is just see how many questions come up with regard to a particular issue and then see whose ballpark it falls in. In the time that I have this afternoon, there are three points I'd like to make on the jurisdiction issue. The first is that Britain is on the party of certain jurisdictions to demonstrate that there is actual jurisdiction. The second point is that there is no related jurisdiction in this case because Wisconsin University failed the Packard v. Higgins test. And the third point is that there is no jurisdiction because Brad Fischer and Chris Holkers of the trust argue jurisdiction. I think the key issue right now is for us is that related to jurisdiction. And so it looks as if it's pretty clear that Packard is the law of the land. It's not only the law here, but the Supreme Court has endorsed it in Celotax. And so if there is a conceivable effect of the bankruptcy, then we have related to jurisdiction. Yes, Your Honor, the conceivable concept of Packard v. Higgins itself makes play in various forms of art. And when this Court in a series of decisions since Packard, primarily in combustion engineering, it's probably one that we cite about papers being played, is that the Court is extremely reluctant to talk. Ancillary litigation between creditors and non-creditors, third parties, is a form of the bankruptcy process. Parties have argued bankruptcy, bankruptcy protection, bankruptcy jurisdiction. Practically speaking, if McGinn recovers from the auditor and the law firm and more, that is, according to your words, an accounting has to be done with regard to what has been given as a proof of claim in the bankruptcy, is that correct? That would be part of the damages against the defendant's crime. It's not true in your district court, but it was a timeout. That's not true because as I recall, note 36, note 10 says that yes, there has to be an account. So if you recover from the bankruptcy estate, that's an offset against the recovery that you have in the suit, or if you recover in the suit, that's an offset against the recovery in the bankruptcy. The notice is not decided here. Under Ivanhoe, the deciding is not possible under Section 502 of the Bankruptcy Code under Ivanhoe and under the settlement agreement itself. And let me explain that. Okay. Under the middle settlement agreement that was approved by the Bankruptcy Court in this case, the repeat claim was fixed against the debtor. And the repeat claim was fixed against the debtor. Subject to, as an unsecured claim, subject to whatever compromise he did not get on his collateral that would reproduce the claim. And so he has to pay a secondary distribution after 3 million dollars of unsecured claims were paid. That's it. So you mean that he claimed against the debtor that there was a file that was fixed by the settlement agreement after that happened. You mean file D, complaint against the defendants. That would mean the averages against the defendants is 4,000, which would be the difference between what they got out of the bankruptcy and what they're liable for. But the recovery estate would be set not the other way because of this 1935 case. The item of page 200 is not only block solid, block letter, civil liability law, it's embedded in section 502 of the Bankruptcy Code. Section 502 of the Bankruptcy Code is the provision which covers allowances, disallowances, and claims. As the Supreme Court said in Troubles v. PGD, there are 8 different reasons for the recovery. Let's just make it. You get a recovery against either the auditor or the law firm or both. That's right. How does that affect what you get in the bankruptcy? It doesn't work. It doesn't at all? It doesn't work. Even though it said in your brief that there's an accounting, what do you mean by an accounting then? Well, an accounting is to avoid the potential for a double recovery, which in the case of Lawson, I don't know. That sort of stuff. That would be a very pragmatic illustration. I don't know the substance of the situation there. The creditor had a claim against the debtor. A third party who was not in bankruptcy secured that claim that there was a mortgage that the third party had given. And so the idea was that when you recover from the third party, it would not reduce your claim in the bankruptcy case. And the U.S. Supreme Court said no, absolutely not. But what you say here is the way you get around this is in footnote 36, the accounting as a way you would be consistent with Ivanhoe could be achieved, among other ways, through an assignment of Nuveen's bankruptcy claims to defend it. Is that correct? Do you really think that would happen? Not in this case, Your Honor, because there's no real possibility of a double recovery here. This is how Ivanhoe works, for example, with guarantees. We often see situations where you have the creditor's claim against the debtor. And he doesn't make guarantors. Suppose a judge in Illinois had borrowed money from you, a million dollars, and all of a sudden, that would be a mistake. He has a high file for bankruptcy, which is almost certain. And so the question becomes, if you recover from the debtor, I'm sorry, if you recover from the guarantor, does that mean you have to deduct that against your claim against me? And the answer is no. And so how do we protect against double recovery when you might recover in full from the guarantor and in full from the principal? And the case is that Ivanhoe said, well, that's easy. We'll give you money back to the party whose second claim was liable. That's the one guarantee. That's how Ivanhoe works. That's how we prevent double recovery. I thought what Ivanhoe said is that a creditor cannot recover more in total than the total that is owed by the debtor. Against the debtor. That's correct. Let's say the claim is for $10 million, and the debtor is paying $20,000, so $2 million. So if you're the creditor and you've got a, in this case, roughly a $10 million claim that's allowed. Yes. So that's what the debtor owes you. And you then recover against parties that you claim caused the problem to begin with. In that context, doesn't that come off of the $10 million? No. It reduces our damages against the dependents. It reduces our damages against the sole proprietor. So let's just say you recover $9 million. You sought $9 million. I would call it $9.5 or something like that. Correct. You recover $10 million from the owner and the law firm together. Yes. Then what happens to your claim? Nothing happens to our claim in bankruptcy. If we got, say, $10,000 from the debtor, so we got $100,000.  Now it's $10 million. Then when we simply re-argue it with the law firm and say we win, our damage is that the debtor is between $10,000 and $100,000. So you don't take that risk. Actually, that was Judge Adler's question. You get the $10 million from Blueberry and Rubin Smith first. Yes. Now, do we have any claim in bankruptcy? We still don't have a claim in bankruptcy. How much can you recover in bankruptcy? We want to recover whatever the distribution is going to be in bankruptcy, but that's where the accounting idea comes in. So, for example, my example, $10 million, and you say if you get $10,000, you get a notice, you get $11 million? No, we get $1 million back to the former president. That's the accounting. That's how it works in the guarantee context. Again, where you have a $10 million claim against the debtor, and you have somebody that's guaranteed it, you recover $10 million, you get $100,000. Now, with Smith, who's your client again, the debtor? What makes a debtor and a law firm here guarantors? I'm sorry? What makes Withersmith and the law firm here guarantors? Well, they're not guarantors. So it's by analogy. But again, the J&J town analogy is a pretty big bridge. No, I think the J&J town case got it exactly right. In the J&J town case, the court said, look, the amount of your claim against the tort users, those who are malpractice, that gets reduced by the recovery you get from the debtor, not vice versa. And that's absolutely right, because if you look at Section 502 of the bankruptcy code, what we see is Section 502 lists the exclusive grounds, Dr. Schauble versus PG&E versus the law firm claims, basically. And those exclusive grounds do not include recovery going to parties such as the tort user or the guarantor. And, again, that embodies item level. And that's a personal item level. So even if there were a potential for debt recovery, Section 502, because our claim is fixed, there's no conceivable impact on the administration of this state. The recoveries we get will not offset our claim against the debtor. That simply cannot happen under Section 502. There's no capacity to go back under Section 502 and completely reconsider our claim. There's no capacity under Section 502 to, in fact, go back and reduce our claim because of this additional recovery. Those are the jurisdictional facts that are in place when we file our complaint. So we're saying that it is, if your bottom line points it down, it is inconceivable that a judge would favor to convene, in its action against the auditor and the law firm, it will affect bails, bankruptcy, estate, even a dime. Under this course of process, yes, again, conceivability comes from not being the corporeal version of conceivability but the legal version. For example, in terms of engineering, the fact that there was financial contribution by the third party not debtors, there was shared insurance, there were common manufacturing facilities, those kind of connections were not enough. Does your settlement agreement specify the result that you're talking about right now? Yes. The settlement agreement sets out exactly what our treatment is going to be against bail, which was then ratified in the plan agreement. If you assign, for example, to the defendants under your scenario, the million dollars that you get when you get $10,000 on your allowed claim, doesn't that affect the bankruptcy? No, it doesn't. The bankruptcy is over. And by the time we got to the actual creation… It doesn't affect the estate at all. It doesn't affect the estate at all anymore. You've lost a million dollars. The issue is the time of filing, not the time of the conclusion. I have a question that I have. We had this very interesting dialogue here. We were talking about guarantors. We don't have any guarantors here, do we? Well, you're absolutely correct. But under this court's decision in Newark, the time of filing rule applies in fiduciary cases. It's not clear if it applies or not. There's been a correspondence relating to jurisdiction. That's not a fiduciary question. It's a fiduciary question. The exception that the district made is that it's objective. Well, we know that's true in Article III of the Constitution, Your Honor. That's right. We know that's true in that one of the Henry things, which is actually that jurisdiction depends upon the statutory regime we're talking about. In Iraq, of course, that was an RTC case under Section 1441. Under the RTC act of litigation, jurisdiction was destroyed. And in the statute, that's what this court held. Under this court, again, we have in the time of filing requirements the diversity context. This, of course, is not diversity. There's really nothing wrong with the court saying there might be, yes, you have to look at X, but I now think that Y applies. You can't say to a court, you can't do that. No, of course, you can't, Your Honor. And I'm not saying that if I receive jurisdiction, it's lost upon confirmation of the plan. But as this court has made plain, once you get in the post-confirmation period, the analysis again changes. It changes to a closed-max list analysis. It really is a closed-max list analysis. Would you say that because jurisdiction lost after the district court makes its decision, in this particular case, and it was related to at that time, and it's no longer RTC, and therefore the circumstances haven't really changed. But within the jurisdiction, the fact-by-time analysis is what this court made plain in Packard v. Higgins. So it really depends on each individual case. Both out of Packard v. Higgins and also in federal law, those were claims by creditors against third parties who were to bankruptcy, exactly as we have here. And in both of those situations, the defendant said, Oh, but if you sue us, we'll have a claim only against the estate. That we'll have something packed on the estate. And this court said, That's not enough. So even though the standard is conceivability, again, that's a charm of art. And that's exactly what we have here. What the defendants here are saying is, Well, this might have an impact on the estate, because then we might be able to come back and invite you some way to adjust the claim. But the first argument is no, that's not possible under either judgment. It's progeny. And I think that the guarantee analogy is intact. But even more so, section 502 codifies the item of result, and it excludes the grounds for a disciplinary claim. It does not include offset. But even if that were not true, again, we have an analogous situation, where they have to come back, and something comes later. It's actually much more attainable. It's actually much farther away from the latitude jurisdiction than existed in combustion engineering. But we have lots of connections. We have enormous and basic, two condos, who are saying, we're sharing the estate. That becomes bound to, is there a conceivable effect on the estate? I think we've talked that through. Yes. We'll get you back on for both. Thank you, Your Honor. And Mr. Glenn, don't worry. The 14 guesstimates we gave Mr. Brunstad will not count against you. We're going to give you, actually start, just give him 10 to start with. Thank you, Your Honor. Thank you. Thank you, Your Honor. Good afternoon, Your Honors. I'm Robert. I'm also part of the meeting. Your Honors, should the court decide that the district court did have jurisdiction, then we have, as Your Honor, not a weak, but a hard, and are frequently presented a number of independent reasons why this right should not have been dismissed at all, or at the very least, should not have been dismissed at all. Just as a, thank you, just at the outset, has a suit been brought against the attorneys who represented me in connection with this action? Not at this point, Your Honor, at least not to my knowledge. Let me start with a quick question in the middle. To make a claim that you don't have to file an affidavit of merit with regard to malpractice and negligence is pretty difficult in this particular jurisdiction. I'm not, I won't say it's completely precluded. There is the possibility that one could argue that two of the claims against Withensmith, the two fraud claims, may conceivably not be contemplated by the affidavit of that section. And then when I looked at your brief, I only found two pages on that. Why, I mean, I realize it's not the full game. It's almost like he's going for a home run instead of a double. I think that's a fair way to assess it, Your Honor. We felt pretty comfortable with the idea that the fraud at the age of that claim he would not implicate the affidavit in affidavit of merit statute. But if you are so comfortable, then we're going to spend more time looking at that. I guess you make choices as you go along and we felt pretty good about our substantial compliance argument and pretty good about our extraordinary circumstances argument and then we have our Erie argument. And we decided that it would, it takes a little time to roll those arguments out and that's the way we decided to do the brief. I guess you could make a fair argument we could done deal with. Yeah, because we took a look at what other cases are out there and, you know, it's, there's 23 jurisdictions that have statutes similar to this. Ten have cases that deal with whether fraud is included. Three of them are statutes pretty close to our court. Of those ten, only one, Georgia, has said that fraud is outside of the affidavit of merit statute. Now, Georgia is quite similar. The Colorado and Connecticut, we found, are quite similar and they say any time you're dealing with a claim that someone is diverging from their professional standard of care, whether they're going to be put on a rock. I'm happy to stand with Georgia in this regard. Most of those cases, as I remember them, are what I would call classic attorney malpractice cases. That is, it is the client who is suing the law firm for having destroyed or initiated or in some way harmed this cause of action that they otherwise would have. This is a little bit different in that this is not a situation where Dubene is suing his lawyer for malpractice. It's suing, really it's suing these two other entities, the accounting firm of the law that represents them and represents their own. So it falls a little bit outside of what the classic is here. And we think in those circumstances, the fraud and the evading claim do stand up and do not require the affidavit of merit statute. But I would imagine it would affect alleging that someone, two firms, have performed outside what is required of them for their professional diligence. I think in proving fraud, it would necessarily imputate the idea that the two firms didn't act as they should have acted because when you have a fraud claim, you obviously are always making that argument. But I think the elements of a fraud court claim in New Jersey would stand for the proposition that it was never intended by the New Jersey legislature when they articulated personal injury, wrongful death, and property damage to include a fraud claim. And they could very easily have done that had they wanted to do it. For counsel, isn't this Baldwin's law, the Atlantic City case, a controlled decision? You're familiar with it? I'm not. That was always the case. The question is, other than New Jersey... Here it says, causes of action, alleging intentional torts that rely for their success upon proof of deviation from the professional standard of care from a professional subject to a requirement. All right. I do know that case. It's a New Jersey Court of Appeals case from 2003. And then you add on to that the Fink v. Whitner case, which is, I believe, Judge Rodriguez in New Jersey was saying, quote, only claims that require proof of a deviation from a professional standard of care will require an affidavit of merit unless an exception applies. And he found that this required a deviation from a professional standard of care. But back to the case right off the bat, as you've got a Court of Appeals case decided by Judge Alderson, Baltazar, that's the best way I want to go. You know, I guess I would say two things about that, Your Honors. One is that the epicenter of the action for malpractice is, in fact, a departure from a professional standard of care. That is not the epicenter of a typical tort action. A typical tort action for fraud is something quite different. At the very least, three of your five claims, one against Whit and Smith and two against Litherbury, are essentially negligent slash malpractice, right? Well, they are negligence and they are malpractice in that sense. But that is not the fraud claim and that is not the evident of any claim. There are harder cases to prove. Fraud is a harder case to prove. Negligence cases, Your Honors, are more difficult cases. The standard is higher. It's more difficult. But I think we meet that standard in the complaint. Can I just ask you a question with the Litherbury, just as a factual matter? The argument against Litherbury is that you gave on October 11th a legal opinion and paragraph 7 of that legal opinion it says, except for a certain Medicare investigation, there's nothing that we know of that really affects adversely and materially your ability to do this kind of deal. And you're saying that there was something that happened in September that caused that not to be true. We're alleging an effect, Your Honor, that when they made that representation, they had knowledge to the contrary. So that's a very... They took at the outset of paragraph 7, which was that except for a particular Medicare outlier or whatever investigation, that wasn't the investigation that was going on when there was reimbursement sought from Bayonne back in September? I'm not actually certain about that, so I don't want to represent one way or the other. But because if it was, it would be game, set, and match, they would win. And I'm not certain about the answer to that question. We are confident, and even though it's only two pages of confidence, we are confident that under New Jersey tort law, the allegations of fraud and the allegations of being a fanatic stand outside the statute. But we are equally confident of the fact that this is a case where counsel did everything right except it didn't know about the outlier. We're not trying to hide behind that and say that it's not an emergency counsel case. It certainly is not. We believe it happens. It just isn't. But it happens. And what they did, as you know, not only did they consult them with two experts, they prepared an expert report that can point by name on standards that are extremely detailed, and yet they didn't know about the outlier. They didn't know about it, and as a result, 130 some days in, they get hit with a motion to dismiss the next day. I'm not sure a motion to dismiss is necessarily right, but because the outdated merit is a key requirement. Correct. And so it might be a motion for summary judgment or whatever it would be, and maybe one of them did file a motion for summary judgment. The point being, the next day they filed the outlier. But they're beyond the 120 days. They're beyond the 120 days, but, Your Honor, it would be able to New Jersey... It seemed like it was the New Jersey Supreme Court that's done this. They didn't file a case law on this subject. Virtually every time the New Jersey Supreme Court has looked at a technical failure to comply with the outdated requirements statute, it has done two things. One, it has said very fact-sensitively, very, very, very carefully at the facts to see whether the purpose of the statute was affected by what happened here, whether it was the statutory purpose that was affected. And in virtually every case, they have rescued the plaintiff with the consequences of the harsh consequences that they could have built an inflexible confrontation. I'm glad you have it in every case. Virtually every case. It's a... You've got new cases, right, for a while, and they say, okay, let's have this conference. Let's make sure everybody knows. But you made the choice to file in federal court here. Had you filed in state court, you would have seen on the cover sheet, hey, you've got to take a look at this particular statute, and within 90 days, you've got to have this for our conference, and everybody's brought to speed. But it's hard for us to sit here and say that those are not procedural matters that are dealt with under federal law, and federal law doesn't require those. Well, Your Honor, I want to make just a few points about that. One is that, as Your Honors know, in Chamberlain, you decided that you had the particular parties to file in federal court. You also said in Chamberlain, by the way, that the purpose of the statute was not notice. It was to weed out frivolous cases and let meritorious cases proceed. That was Your Honor's decision in Chamberlain. But beyond that, and this goes to our very argument, this... The happenstance, and I'm fairly the choice of council to file in federal court, resulted in not getting a mandated notice that the New Jersey Supreme Court has been mandated since 2003 for state cases. Now, the affidavit of our statute was found to be substantive law. We submit that that mandated rule by the New Jersey Supreme Court should also have been applied by the district court sitting in diversity, and a notice should have been given there. Well, because if you do that, it was probably the outcome determined to appear. I mean, the result, I think it's fair to assume would have been different had the case been filed in the state court rather than the federal court. And talk about forum-shopping implications being implicated. If you're a defendant and you have a very heavy, weighty case that's been brought against you, and you look at it and you say, well, they're going to get the civil cover sheet notice, but if we remove it to federal court, they're never going to get the notice that's mandatory in the state court that the judge gives. It's not that they didn't have an option here. They want to file it in the state court. They didn't want it with the federal court. I don't know what you're still arguing with, but who chose the forum? Nobody chose the forum. What I'm saying is that if you apply Murie principles as to whether or not the district court judge should have provided the notice that would have been given in state court, the twin purposes of Murie in terms of foreign shopping and inequitable results that result depending upon whether you're in federal court or state court, we require that the district court, that that rule by the New Jersey Supreme Court be considered substantive law. And in other words... I think a major premise of your argument is that this is a procedural matter. I don't see this as a procedural matter. I see this as part of a cause of action. I don't see that as a procedural matter at all. This is part of a cause of action. I agree that it's not procedural. I think the court has said many times that the label doesn't matter. You're giving us the immediate argument then. I think Murie said in the book he said that the affidavit of merit is clearly substantive. Correct. But I think the point being that the argument is that the Palermo Conference and the cover sheet are clearly procedural and because you chose federal court they would be governed by federal procedure albeit when it comes to the affidavit of merit statute it is substantive in general. And certainly I understand that argument but what I'm saying is that argument is wrong when you apply what this court has applied in terms of its theory analysis. This court has applied certain factors to whether or not any New Jersey rule of court or any state's rule of court doesn't matter whether it's a statute or not. You're saying that Burns and Thoyer have a substantive gloss on the affidavit of merit  to be incorporated into a federal court procedure. I'm saying exactly that judgment. Yes. And how so? I mean it's a rule of procedure one being a the way it's done in the I guess by rule for the cover sheet and I guess by court decision from 2003 with regard to the conference. What makes that sense to you? As your Honor knows rules can be substantive in this. There are many decisions where rules of court are deemed to be substantive. It doesn't mean it's what you call them. There can be rules. What makes this substantive? What makes it substantive are three things. Three things make it substantive. One is that it's outcome determinative. Two, that is one, in federal court you don't get notice, you don't get a notice, in state court you do. Two, it encourages forum shopping for the reasons that I said as a policy matter. It's tough to make the argument you're making when it's forum shopping. He shows the forum. I'm sorry Your Honor, I'm not making my point well. I'm saying that not having a federal district court get the same notice, everybody understands that doesn't happen in the federal court. I'm not making my point well. I'm saying that not having a federal district court get the same notice, everybody understands that doesn't  the federal district court. I'm not making my point well. I'm saying that not having a federal district court get the same notice, everybody understands that doesn't happen in the federal district court. I'm saying  having a federal district         district court. I'm saying that not having a federal district court get the same notice, everybody understands that doesn't the federal district  the same notice. It was an extraordinary circumstance here that they didn't get the notice. And attorney as you know, it wasn't extraordinary in federal court. In one way, if this is procedural, you don't do so well. If it's substantive for these are substantive matters. I guess the argument might be look, if the statute is substantive, that's what Chamberlain says, then those things that are going along with it, those things that are to make people apprised that this is serious business, they have to be substantive as well. I think that's one of the arguments. If you can make the substantive, it sweeps in the New Jersey case law with regard  along with it. I think it's right. And beyond that, I think the substantial compliance doctrine works to benefit the individual as well. If you look through those five factors, the one factor that is plain is no prejudice to the defendants. I have not a serious argument that defendants were prejudiced. The only issue that might come up under those five factors is whether a series of steps were taken to notify the defendants. There are other substantial compliance and I think Judge Brotman's decision in district court can be that substantial. There can be circumstances where even though you didn't say it, you just appeared in it for a position of only reason. I hate the cliche but the one thing the district court didn't say was they had to break by a test on attorney inadvertence and saying you can never find substantial compliance when there is attorney inadvertence. If there is attorney inadvertence or a lack of knowledge, everything else has been done right. Everything else  done  I don't think there is an option of substantial compliance. Thank you very much. Thank you. Mr. Campbell. Good afternoon. I'm Don Campbell. I'm here to address the jurisdictional issues. It comes down  thing. Is there a reading that favors Mr. Brunstad or favors you? If it is PAC or this is conceivably affects the bankruptcy, Mr. Brunstad says it doesn't because no matter what happens, the effect of the bankruptcy will be nil. Even if we recover $1 million from the bankruptcy state and $10 million in our suit, then we will give that claim to the defendant. Your Honor, the Brunstad argument is that it cannot be interpreted to allow the party to receive more than 100%. The reality is we all can see that PAC order is the test that it should get by the time of filing. At the time of filing, it was conceivable that the parties would settle their claims at the time of filing. Now, there is going to be a collision that is going to occur, and it is going to affect the bankruptcy. Because it is going to affect the bankruptcy, it is clearly more related to the jurisdiction than the bankruptcy. I know it is just not holding the argument that is presented by the courts. But as far as time of filing goes, I must have addressed that as well. A clear time of filing is the test. And if it is actually this resource case, then the time of   going to affect the bankruptcy. And there is no doubt that the time of filing that you make your assessment. As far as the E-7 is concerned, it is clear that the E-7 could not possibly have permitted the parties to not consider what kind of distribution was going to be collected from outside  And Chief Judge Brown clearly understood that and could interpret the contract to implicitly find that there was going to be this recovery if there was going to be recovery. Otherwise, there was going to have to be a day of bracketing and that was going to affect the distribution to the parties. File 2B supports this. File 2B 1 supports this. Clearly, under political law, there could be an objection under File 2B 1. That is clear. Under this case, it is clear and even under File 2B 1, it is clear that there can be a down for adjustment if there is going to be a correction. If there is a correction, it is clear. It shows the file at a time when something could have been achieved or adjusted could have been achieved pre- confirmation or pre- distribution. There were scenarios that could have happened that would have affected the court. It is clear that there is another case in bankruptcy court that had the same allegations in bankruptcy court and eventually there was a settlement in that case.  there was going to be an adjustment there was going to be an impact, we had this outlier creditor who in our opinion has no standing to bring such cases. We settled that claim. It was clear that there was no standing to bring It  clear that there was no standing to bring such cases. It was  there was  standing to bring such cases. It was clear that was no standing   such cases. It was    there   standing to bring such cases. It was clear that there was no standing to bring such cases. It was clear that there was   to bring such  It was clear that bring such cases. It  clear such cases. It was  that there It was  that there was no    that  was no standing to bring such cases. It was clear that there was no standing to bring such cases. It  clear that there     cases.    that there was no  clear that  was no standing